UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERT GRIJALVA ADAME, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ──────────────────────────── ) | NO. EDCV 12-1079 AGR <br><br> MEMORANDUM OPINION AND ORDER |

      Plaintiff Gilbert Grijalva Adame filed this action on July 2, 2012. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on July 13 and 16, 2012. (Dkt. Nos. 6, 7.) On April 18, 2013, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

      Having reviewed the entire file, the decision of the Commissioner is reversed and the matter remanded for further proceedings consistent with this opinion.

**I.**

## PROCEDURAL BACKGROUND

On February 9, 2010, Adame filed an application for disability insurance benefits, alleging an onset date of November 19, 2007. Administrative Record ("AR") 10. The application was denied initially and upon reconsideration. AR 10, 85-86. Adame requested a hearing before an Administrative Law Judge ("ALJ"). On November 30, 2011, the ALJ conducted a hearing at which Adame and a vocational expert ("VE") testified.[1] AR 37-80. On December 28, 2011, the ALJ issued a decision denying benefits. AR 7-24. On May 7, 2012, the Appeals Council denied the request for review. AR 1-3. This action followed.

**II.**

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

---

[1] A previous hearing on October 12, 2011 was continued due to failure to send notice to the claimant's attorney. AR 81-84.

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

## B. The ALJ's Findings

The ALJ found that Adame met the insured status requirements through December 31, 2012. AR 12. Adame had the severe impairments of diabetes mellitus, bilateral shoulder impingement and arthritis in bilateral hands. *Id.*

Adame had the residual functional capacity ("RFC") to perform a range of light work: he "can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for six hours out of an eight-hour workday, with customary breaks; he can sit for six hours out of an eight-hour workday; the claimant can occasionally climb ramps and stairs, but he should avoid ladders, ropes and scaffolds; he can occasionally balance, stoop, kneel, crouch, or crawl; the claimant can perform occasional reaching in all directions, but he is precluded from overhead work with either arm; and the claimant can frequently, but not continuously, use both hands for handling and fingering. AR 14. Although Adame was unable to perform any past relevant work, there were jobs in significant numbers in the national economy he could perform such as electronics worker, small products assembler and packing machine operator. AR 21-23.

## C. Treating and Examining Physicians

Adame contends the ALJ improperly considered the opinion of the treating

3

orthopedic surgeon, Dr. Steiger, and the examining orthopedic surgeon, Dr. Sophon.

An opinion of a treating physician is given more weight than the opinions of non-treating physicians. *Orn*, 495 F.3d at 631. To reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotation marks omitted). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas*, 278 F.3d at 956-57 (citation and quotation marks omitted).

An examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings. *Orn*, 495 F.3d at 632.

"'The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.'" *Ryan v. Comm'r*, 528 F.3d 1194, 1202 (9th Cir. 2008) (citation omitted) (emphasis omitted). However, a non-examining physician's opinion may serve as substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 1. Dr. Steiger

In Adame's workers compensation proceeding, Dr. Steiger prepared two reports dated July 11, 2009 and August 20, 2009. AR 256-74. After physical examination and review of medical records on July 11, 2009, Dr. Steiger diagnosed musculoligamentous sprain, cervical spine, with left upper extremity

4

reticulates; internal derangement, left shoulder; tear of the rotator cuff, left shoulder; status post arthroscopy, left shoulder, with possible subacromial decompression and/or Mumford procedure, in 2008; and capsulitis, left shoulder. AR 263. Dr. Steiger precluded Adame from using his left upper extremity and from repetitive or prolonged neck movement. *Id.*

On August 20, 2009, Dr. Steiger conducted a physical examination and reviewed MRIs taken on July 9, 2009. Dr. Steiger made the same diagnosis except he added disc bulges at C5-C6, C6-C7 and C7-T1 of 2 millimeters, and degenerative SLAP lesion of the glenoid labrum, left shoulder. AR 269-70. Dr. Steiger considered Adame permanent and stationary. AR 270. In terms of permanent physical restrictions, Dr. Steiger opined: "No use of the left upper extremity. No repetitive or prolonged neck movement." AR 272. Dr. Steiger opined that Adame could not return to his usual occupation. AR 273.

An ALJ "may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings." *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002). "Instead, the ALJ must evaluate medical opinions couched in state workers' compensation terminology just as he or she would evaluate any other medical opinion." *Id.*

In that regard, "it is important to distinguish between those portions of the physicians' reports that represent the physicians' medical findings and those portions of the reports that represent conclusions as to the claimant's disability for purposes of worker's compensation." *Coria v. Heckler*, 750 F.2d 245, 247 (9th Cir. 1984). Because the tests for Social Security disability and workers' compensation are different, "the ALJ could reasonably disregard so much of the physicians' reports as set forth their conclusions as to [the claimant's] disability for worker's compensation purposes." *Id.* "On the other hand, the physicians' findings, *qua* findings, do not necessarily suffer from similar defects." *Id.* at 248.

"[T]he ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the worker's compensation claim by the same standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim, unless there is some reasonable basis to believe a particular report or finding is not entitled to comparable weight." *Id.*

The ALJ considered Dr. Steiger's objective findings. AR 20; *see* AR 18. The ALJ stated Dr. Steiger's functional limitations would preclude Adame's past relevant work, but "he could do work with the residual functional capacity assessed herein." AR 20. The ALJ is incorrect. As noted above, Dr. Steiger precluded use of the left upper extremity and repetitive or prolonged neck movement. AR 272. This was based on Dr. Steiger's diagnosis of cervical sprain and left shoulder internal derangement, rotator cuff tear, status post arthroscopy with possible subacromial decompression and/or Mumford procedure in 2008, and capsulitis. AR 269-70.

However, the ALJ also noted a subsequent orthopedic examination by Dr. Sophon on April 22, 2010. AR 18, 310-15. Dr. Sophon reviewed Dr. Steiger's report and examined Adame. AR 310. Dr. Sophon found full range of motion of the cervical spine with no inflammation or tenderness. AR 18, 312. Dr. Sophon found atrophy of the left deltoid muscle, generalized tenderness over the anterolateral aspect of both shoulders and limited range of motion in the left shoulder. AR 18, 313. Adame also had fusiform swelling of the PIP joints of the fingers in both hands, and was unable to make a complete fist. AR 18, 313. Dr. Sophon diagnosed impingement syndrome, bilateral shoulders; and arthritis in both hands. AR 18, 314. Adame was capable of lifting/carrying 10 pounds occasionally and 10 pounds frequently, and was limited to frequent reaching, and no above-shoulder-level work with both arms. AR 18-19, 315. Adame did not have manipulative limitations. AR 315. The ALJ properly relied upon Dr. Sophon's findings to discount Dr. Steiger's neck and left shoulder restrictions.

### 2. **Dr. Sophon**

Adame further argues that the ALJ improperly rejected the opinions of Dr. Sophon, the examining orthopedic surgeon, on April 22, 2010. The ALJ gave significant weight to the state agency nonexamining physicians. AR 19. There is no evidence in the record that either state agency physician is an orthopedist. On May 4, 2010, Dr. Jacobs assessed that Adame was capable of light work and that Dr. Sophon's "conclusion [was] inconsistent with the objective findings." AR 322. Dr. Jacobs found Dr. Sophon's conclusions "confusing" because Dr. Sophon imposed a lift/carry limitation at 10 pounds frequently and occasionally "but no manipulative restrictions and no stand/walk limitations." AR 324. Dr. Laiken reaffirmed Dr. Jacobs' conclusions on August 10, 2010. AR 19, 345.

The ALJ discounted Dr. Sophon's opinion based on the alleged inconsistency between the lift/carry restriction and the absence of any sit/stand/walk restrictions, manipulative restrictions or postural restrictions. AR 19. Neither the ALJ nor the examining physician explained what was allegedly inconsistent. Dr. Sophon diagnosed impingement syndrome in both shoulders. AR 314. Dr. Sophon found atrophy of the left deltoid muscle, generalized tenderness and limited range of motion in the left shoulder. AR 313. This diagnosis appears fully consistent with a lift/carry restriction and the absence of sit/stand/walk restrictions, which do not involve the left shoulder.[2] The ALJ acknowledged that Dr. Sophon's examination revealed no abnormalities in the lower extremities, and indicated Adame had full range of motion in the cervical, thoracic and lumbar spine. AR 21. Although the ALJ noted that Dr. Sophon did not have the benefit of subsequent medical evidence and hearing testimony, the

---

[2] There does appear to be an inconsistency between Dr. Sophon's statement that there were no manipulative restrictions and his opinion that Adame was limited to frequent reaching, and no above-shoulder-level work with both arms. AR 315. Reaching is considered a manipulative limitation. AR 320. However, Dr. Sophon, the state agency physicians and the ALJ agree on these restrictions. AR 14, 315, 320.

7

1  ALJ did not identify evidence or testimony inconsistent with Dr. Sophon's lift/carry
2  restriction. In May 2010, January 2011 and April 2011, Adame continued to
3  complain of left shoulder pain. AR 336, 347, 350.

The ALJ did not provide specific and legitimate reasons for rejecting Dr. Sophon's lift/carry restriction. On remand, Dr. Sophon's lift/carry restriction of 10 pounds frequently and occasionally should be credited as true. *See Widmark v. Barnhart*, 454 F.3d 1063, 1069 (9th Cir. 2006).

### E. Credibility

Adame contends the ALJ failed to properly assess his credibility.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Adame's medically determinable impairments could reasonably be expected to produce the alleged symptoms. AR 16.

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.]'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental

conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing SSR 88-13) (quotation marks omitted).  The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment.  *Thomas*, 278 F.3d at 958-59.

The ALJ found that Adame's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC.  AR 16.  The ALJ relied on three reasons: (1) work activity after the alleged onset date indicating that his daily activities were greater than claimed; (2) conservative treatment after August 2009; and (3) lack of objective evidence supporting the severity of the symptoms.  AR 15, 21.

"Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  For the reasons discussed above, the objective medical evidence does not support the alleged severity of Adame's symptoms.  The ALJ did not rely upon this reason alone.  The ALJ noted that the record reflects work activity after the alleged onset date of November 19, 2007 until April 2008.  AR 15, 258.  Adame disputes this statement.  According to Dr. Steiger, Adame was returned to regular duty work in February 2008 and worked for approximately two weeks.  AR 257.  Dr. Steiger then indicated that Adame worked for the company until April 2008.  AR 258.  Adame stated that he stopped working on February 5, 2008, which is also after the alleged onset date.  AR 196.  After August 2009, there is a gap in the treatment records for the left shoulder until approximately May 2010.  Adame testified that his pain medication helped, which was why he did not go to the

9

doctor so much during that time.[3] AR 47-48, 59. When there is conflicting evidence, the ALJ must resolve   It is the ALJ's province to resolve conflicts in the evidence. "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

### F. Vocational Expert

According to the ALJ's RFC, Adame was restricted to occasional reaching in all directions and was precluded from overhead work with either arm. He could frequently, but not continuously, use both hands for handling and fingering. AR 14. Based on the VE's testimony, the ALJ found there were jobs that existed in significant numbers in the national economy he could perform such as electronics worker, small products assembler and packing machine operator. AR 21-23.

Adame argues that the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT").

"[A]n ALJ may [not] rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the Dictionary of Occupational Titles."[4] *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1234 (9th Cir. 2009). SSR 00-4p requires the ALJ to "first determine whether a conflict exists" between the DOT and the vocational expert's testimony, and "then determine whether the [VE's] explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Massachi*, 486 F.3d at 1153.

---

[3] Adame testified that he rejected the idea of a third surgery because the first two surgeries did not help him. AR 43.

[4] The DOT raises a rebuttable presumption as to job classification. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

10

In evaluating the VE's explanation for the conflict, "an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435. The ALJ's explanation is satisfactory if the ALJ's factual findings support a deviation from the DOT and "persuasive testimony of available job categories" matches "the specific requirements of a designated occupation with the specific abilities and limitations of the claimant." *Id*. at 1435. Remand may not be necessary if the procedural error is harmless, *i.e.*, when there is no conflict or if the VE provided sufficient support for her conclusion to justify any potential conflicts. *Massachi*, 486 F.3d at 1154 n.19.

Adame argues that the jobs of electronics worker (DOT 726.687-010), small products assembler (DOT 706.684-022) and packing machine operator (DOT 920.685-082) require frequent reaching. These jobs also require the ability to lift/carry 20 pounds occasionally, which is inconsistent with Dr. Sophon's restrictions. This matter must be remanded at step five of the sequential analysis.

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and this matter remanded for further proceedings consistent with this opinion. Dr. Sophon's lift/carry restriction must be credited as true on remand.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: June 21, 2013

_____
ALICIA G. ROSENBERG
United States Magistrate Judge